IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYLER C. CORBIN, Special Administrator of the ESTATE OF JOHN CORBIN, Deceased, | |
| Plaintiff, | |
| v. | Case No. 3:21-CV-275-NJR |
| FRED WEBER, INC., and BLUFF CITY MINERALS, LLC, | |
| Defendants. | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Remand filed by Plaintiff, Tyler Corbin (Doc. 15). Defendant Bluff City Minerals, LLC ("Bluff City") also filed a Motion to Dismiss Counts III and IV of Plaintiff's Complaint. For the reasons set forth below, the Motion to Remand is granted, and the Motion to Dismiss is denied as moot.

### BACKGROUND

On May 21, 2020, John Corbin ("Decedent") was working at an underground limestone mine located at 4007 College Avenue, Alton, Illinois, for either Bluff City or Fred Weber, Inc. ("Fred Weber") when he sustained injuries causing his death (Doc. 1-1, p. 4). On February 8, 2021, Corbin filed a complaint against Fred Weber and Bluff City in the Circuit Court of the Third Judicial Circuit of Madison County, Illinois (*Id.* at p. 3). Corbin brings two claims against Fred Weber: Wrongful Death (Count I) and a Survival Action (Count II) (*Id.* at pp. 3-11). Corbin brings two claims against Bluff City: Wrongful

Death (Count III) and a Survival Action (Count IV) (*Id.* at pp. 11-18).

On March 11, 2021, Fred Weber removed the case to this district court, asserting that the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446 (Doc. 1). On March 29, 2021, Corbin, a citizen of Illinois, moved to remand the case back to state court because the joinder of Bluff City, allegedly a citizen of Illinois,[1] defeats complete diversity (Doc. 15). Defendants filed a response in opposition to Corbin's Motion to Remand on May 3, 2021 (Doc. 25).[2] Because the Court's subject matter jurisdiction is in question, the motion to remand must be resolved first. "Subject-matter jurisdiction always comes ahead of the merits." *Leguizamo-Medina v. Gonzales*, 493 F.3d 772, 774 (7th Cir. 2007).

## DISCUSSION

A defendant may remove any case from state court that a plaintiff could have filed originally in federal court. 28 U.S.C. § 1441(a). The party seeking removal bears the

---

[1] In the Notice of Removal, Fred Weber alleges that "Bluff City, is a Missouri corporation with its principal place of business being 4007 College Avenue, Alton, Illinois 62002" (Doc. 1, p. 3). The Court ordered Defendants to provide the Court a supplemental statement indicating the proper citizenship of Bluff City Minerals, LLC (Doc. 27). Bluff City's Supplemental Statement of Jurisdiction explains that its sole member is Fred Weber, Inc. (Doc. 28). Bluff City continues noting that "Fred Weber, Inc. is a Delaware corporation with its principal place of business being 2320 Creve Coeur Mill Road, Maryland Heights, Missouri, 63048" (*Id.*). According to Bluff City, it "is a citizen of Missouri, Illinois and Delaware for diversity purposes" (*Id.*). To be clear, Bluff City is a limited liability corporation with one member, Fred Weber, with Missouri and Delaware citizenship. Therefore, Bluff City is a citizen of Missouri and Delaware. *See, e.g., Copeland v. Penske Logistics, LLC*, 675 F.3d 1040, 1043 (7th Cir. 2012) ("a limited liability company's citizenship includes every state of which any unit holder is a citizen").

[2] Fred Weber's response to Tyler Corbin's Motion to Remand (Doc. 15) was not timely filed. Local Rule 7.1(c) allows an adverse party in a civil case to respond 30 days after service of a motion to remand. SDIL-LR 7.1(c). The Court notes that CM/ECF had a response due date of May 3, 2021 (Doc. 15). E-Filing Rule 3 reminds attorneys, however, that "[t]he filer is responsible for calculating the response time under the federal and/or local rules. The date generated by CM/ECF is a guideline only, and, if the Court has ordered the response to be filed a date certain, the Court's order governs the response deadline." *See* E-FILING RULES (*Revised November 2012*), https://www.ilsd.uscourts.gov/documents/ECFRules.pdf (last visited June 12, 2021).

burden of demonstrating federal jurisdiction, "and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

A plaintiff may challenge removal by moving to remand the case back to state court. Remanding to state court is appropriate for (1) lack of district court subject matter jurisdiction or (2) a defect in the removal process. 28 U.S.C. §§ 1446, 1447(c); *GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 625–26 (7th Cir. 2013). Indeed, federal courts "possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (7th Cir. 2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)). District courts have subject matter jurisdiction only in cases that raise a federal-question and cases in which there is diversity of citizenship among the parties. *See* 28 U.S.C. §§ 1331–32. Unless Corbin's case falls into one of these two categories, the Court must remand.

Fred Weber removed the case under 28 U.S.C. §§ 1332(a), 1441, and 1446 (Doc. 1), alleging that this Court has subject matter jurisdiction under diversity. Fred Weber alleges Bluff City is fraudulently joined, and thus it does not defeat diversity of citizenship (Doc. 1). Corbin argues that Bluff City is a properly joined party, and there is no diversity of citizenship—thus remand is proper (Docs. 15, 16).

## I.   28 U.S.C. § 1445(c)

Fred Weber contends in its Notice of Removal that "because Bluff City is the employer of the deceased and therefore Plaintiff's claims against Bluff City are barred by the [Illinois Workers' Compensation Act ("IWCA")]" (Doc. 1, p. 4). Corbin also timely

moved to remand explaining that "under Illinois law, the exclusivity bar of the IWCA is an affirmative defense, which must be pled and proven and if it is not raised an employee may proceed with a claim against the employer" (Doc. 15, p. 3). The Court finds that this case must be remanded under 28 U.S.C. § 1445(c).

Under § 1445(c), "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." In other words, defendants are prohibited from removing a workers' compensation action to federal court. To determine whether an action "arises under" a state's workers' compensation law, courts examine whether the action "presents a dispute about the validity, construction, or effect of the law." *Spearman v. Exxon Coal USA, Inc.*, 16 F.3d 722, 725–26 (7th Cir. 1994). "[T]he state's workers' compensation laws must either play a role in determining whether a plaintiff would prevail, or the claim must require inquiry or interpretation of the workers' compensation laws." *Hardinge, Inc. v. Emerson Transmission Power Co.*, 2010 WL 1781031, at *2 (N.D. Ind. May 2, 2010) (citations omitted).

The majority of circuits have held that when a defendant removes despite a statutory provision prohibiting removal, the plaintiff must seek remand within thirty days of removal, or the plaintiff waives the objection. *See e.g., Williams v. KFC Nat. Mgmt. Co.*, 391 F.3d 411 (2d Cir. 2004); *Excel Pharmacy Servs., LLC v. Liberty Mut. Ins. Co.*, 825 F. App'x 65 (3d Cir. 2020); *Wiley v. United Parcel Serv., Inc.*, 11 F. App'x 176, 177 (4th Cir. 2001); *Williams v. AC Spark Plugs Div. of Gen. Motors Corp.*, 985 F.2d 783 (5th Cir. 1993); *Bloom v. Metro Heart Grp. of St. Louis, Inc.*, 440 F.3d 1025 (8th Cir. 2006); *Vasquez v. N. Cty.*

*Transit Dist.*, 292 F.3d 1049 (9th Cir. 2002); *Feichko v. Denver & Rio Grande W. R. Co.*, 213 F.3d 586 (10th Cir. 2000). These circuits hold that provisions identifying nonremovable actions are procedural—not jurisdictional. *But see Alansari v. Tropic Star Seafood Inc.*, 388 F. App'x 902, 905 (11th Cir. 2010) (although the plaintiff did not seek remand within thirty days of removal the Court held that "under section 1445(c), a district court lacks subject-matter jurisdiction to review a retaliation claim arising out of state workers' compensation laws").

The Seventh Circuit has not expressly noted whether the provisions in § 1445 are procedural or jurisdictional. On one hand, *Lingle v. Norge Div. of Magic Chef, Inc.*, 823 F.2d 1031 (7th Cir. 1987), and *Spearman*, 16 F.3d 722, support the notion that the provisions in § 1445 are jurisdictional.[3] In *Lingle*, the Seventh Circuit took up two cases. *Id.* at 1033. In the first case, the plaintiff failed to file a motion to remand. *Id.* at 1033-34. In the second case, a different plaintiff filed a motion to remand pursuant to 28 U.S.C. § 1445(c). *Id.* at 1035. Despite the first plaintiff failing to file a motion to remand, the Seventh Circuit acknowledged that it had to "decide whether the plaintiffs' claims were removable, and if so, whether they were preempted by § 301." *Id.* The Court continued noting:

> A federal court must first determine whether it has jurisdiction. *In a case originally brought in a state court, this requires the federal court to determine whether the suit was properly removed.* Then, and only then, may a court determine whether or not federal law preempts the state cause of action.

---

[3] Besides Seventh Circuit cases directly addressing § 1445, the Court has repeatedly cautioned that "courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). Finding that § 1445 is procedural may not be a narrow interpretation of the removal statute because in some cases this would disfavor the plaintiff's choice of forum of state court.

*Id.* at 1037. While the Court in *Lingle* held that § 1445(c) does not bar removal, the Court still analyzed jurisdiction over the first case, where the plaintiff failed to move to remand. *Id.* at 1039. This is significant because the Court analyzed § 1445(c) *sua sponte* for jurisdictional purposes.

Seven years later, in *Spearman*, 16 F.3d 722, the Seventh Circuit used *Lingle*'s analytical framework to determine whether it had jurisdiction. In *Spearman*, the Court explained:

> *Lingle* was removed under the diversity jurisdiction. We added that federal-question jurisdiction was independently available because the claim necessarily rested on a collective-bargaining agreement, a circumstance that also preempted state remedies; with that conclusion the Supreme Court disagreed. It did not question our holding that § 1445(c) did not require remand, because the *Kelsay* tort did not "arise under the workmen's compensation laws" of Illinois. **The basis of removal, whether diversity or a federal question, was logically irrelevant to the scope of § 1445(c). Even a case containing a federal claim may not be removed if it also arises under state workers' compensation law.**

*Id.* at 724 (emphasis added). By discussing § 1445(c) as part of its jurisdiction analysis, the Seventh Circuit appears to treat § 1445(c) as jurisdictional.[4]

Besides *Spearman*, 16 F.3d 722, and *Lingle*, 823 F.2d 1031, it is difficult to harmonize the notion that § 1445 is procedural with the notion that the proponent of federal jurisdiction has the burden of persuasion that federal courts have jurisdiction. *See In re Safeco Ins. Co. of Am.*, 585 F.3d 326, 329–30 (7th Cir. 2009) ("the burden of persuasion rests with the party asserting federal jurisdiction") (citations omitted). By forcing plaintiffs to

---

[4] In *Spearman*, the plaintiff timely filed a motion to remand (Doc. 7). The Court has not found whether the plaintiff specifically raised 1445(c).

timely object to removal in situations where an action is nonremovable from the start, courts are reassigning this burden to the proponent of remand.

In *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005), the Seventh Circuit reinforced the notion that a removing defendant has the burden of persuasion at removal, and acknowledged that § 1445 satisfies the "express prohibition" required by § 1441(a). In *Brill*, the defendant filed a notice of removal under the Class Action Fairness Act ("CAFA"). *Id*. at 447. The district court allocated the burden of persuasion on the amount in controversy to the defendant—as the proponent of federal jurisdiction. *Id*. The defendant argued, however, that "[CAFA] reassigns that burden to the proponent of remand." *Id*. at 448. The defendant did not rely on any of the Act's language, but pointed to the Senate Judiciary Committee's report which includes this language: "If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional provisions are not satisfied)." *Id*. (quoting S. Rep. 14, 109th Cong. 1st Sess. 42 (2005)). The Seventh Circuit did not find the Senate Judiciary Committee's report persuasive, noting:

> This passage does not concern any text in the bill that eventually became law. When a law sensibly could be read in multiple ways, legislative history may help a court understand which of these received the political branches' imprimatur. But when the legislative history stands by itself, as a naked expression of "intent" unconnected to any enacted text, it has no more force than an opinion poll of legislators—less, really, as it speaks for fewer. Thirteen Senators signed this report and five voted not to send the proposal to the floor. Another 82 Senators did not express themselves on the question; likewise 435 Members of the House and one President kept their silence.

*Id*. The Court continued acknowledging that "naked legislative history has no legal effect, as the Supreme Court held in *Pierce v. Underwood*, 487 U.S. 552, 566–68, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)." *Id*.

After the Seventh Circuit noted in *Brill* that the defendant met its burden of persuasion, the Court noted that this is still insufficient for federal jurisdiction "if state courts have exclusive jurisdiction to resolve suits under the Telephone Consumer Protection Act." *Id*. at 449. Citing to 47 U.S.C. § 227(b)(3), the Court noted that "[t]his is the only portion of § 227 that expressly creates a private right of action, and from its failure to authorize litigation in federal court the district judge inferred that state jurisdiction must be exclusive." *Id*. at 450. The Court recognized that other courts had come to similar conclusions, but noted that those courts only dealt with the question of whether suits to enforce the Telephone Consumer Protection Act may be filed or removed under federal-question jurisdiction, "and not whether such a suit may be removed under the diversity jurisdiction" *Id*. (citations omitted).

Acknowledging that "if state jurisdiction really is 'exclusive,' then it knocks out § 1332 as well as § 1331[,]" *id*., the Court analyzed the Supreme Court decision *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003). "The Justices [in *Breuer*] concluded [ ] that a plaintiff's right to litigate in state court does not block a defendant from electing a federal forum, *because 28 U.S.C. § 1441(a), the general removal provision, allows the defendant to remove any claim under federal law (or supported by diversity of citizenship) '[e]xcept as otherwise expressly provided by Act of Congress.'" Id*. (emphasis added). The Court in *Brill* continued by noting that *Breuer* held "[t]he word 'maintain' in the [Fair Labor Standards

Act] is not an 'express' prohibition on removal." *Id*. Applying *Breuer*, the Court held that
§ 227(b)(3) "does not expressly override a defendant's removal rights under both § 1441
(because a claim that a business violated the Telephone Consumer Protection Act arises
under federal law) and the Class Action Fairness Act." *Id*. Significantly, the Court noted
that "[s]ection 1445 has a list of non-removable actions that satisfy the 'express
prohibition' required by § 1441(a), and the Telephone Consumer Protection Act is not on
that list." *Id*.

On the other hand, the Seventh Circuit's analysis in *Hart v. FedEx Ground Package
Sys. Inc.*, 457 F.3d 675 (7th Cir. 2006), provides a notion that § 1445 is procedural. In *Hart*,
the Seventh Circuit addressed "which party has the burden of establishing federal
jurisdiction when the home-state or local controversy exceptions to CAFA are at issue."
*Id*. at 679. In holding that plaintiffs have the burden of persuasion, the Court noted "the
relation between subparts (d)(2) and (d)(4) of CAFA is analogous to the structure of
28 U.S.C. § 1441(a), which the Supreme Court examined in *Breuer*." *Id*. at 690. The Court
in *Hart* explained that "[t]he general removal statute begins with the phrase '[e]xcept as
otherwise expressly provided by Act of Congress,' and then goes on to delineate a
defendant's right to remove from state court to federal court those cases over which the
federal courts have original jurisdiction." *Id*. The Seventh Circuit then noted that the
Court in *Breuer* stated that "[s]ince 1948 . . . there has been no question that whenever the
subject matter of an action qualifies it for removal, the burden is on a plaintiff to find an
express exception." *Id*. at 681 (quoting *Breuer*, 538 U.S. at 698). The Court in *Hart*
continued noting:

CAFA expressly states that the district court "shall decline to exercise jurisdiction" in two particular situations. It is reasonable to understand these as two "express exceptions" to CAFA's normal jurisdictional rule, as the Supreme Court used that term in *Breuer.* The case might be different if Congress had put the home-state and local controversy rules directly into the jurisdictional section of the statute, § 1332(d)(2), but it did not. We acknowledge that the language of § 1332(d)(4) is mandatory, in contrast with the permissive language of § 1332(d)(3), but that alone proves little. Nothing indicates that the kinds of exceptions to which the Supreme Court referred in *Breuer* were permissive only.

*Id.*

Besides *Hart*, the Court's historical analysis of § 1447(c) in *Holmstrom v. Peterson*, 492 F.3d 833 (7th Cir. 2007), further supports the notion that § 1445 is procedural. In *Holmstrom*, the Court began by noting that the version of § 1447(c) when the Supreme Court decided *Thermtron Prod., Inc. v. Hermansdorfer*, 423 U.S. 336 (1976), the term "improvident" "was construed by the courts to mean removals that were defective in terms of the statutory conditions that Congress had placed on removal." *Id.* at 836. The Court continued pointing out that "[t]he 1988 amendments sought to confirm the courts' narrow reading of § 1447(c) by replacing the term 'improvidently' with 'defect in the removal procedure.'" *Id.* at 837. According to the Court, "the primary importance of the 1988 amendment lay in the establishment of a time limit for bringing nonjurisdictional motions to remand, *not in defining the breadth of remand decisions falling within the scope of § 1447(c).*" *Id.* (emphasis added).

The Court in *Holmstrom* then acknowledged that "[t]he committee report accompanying the 1996 amendments to § 1447(c) noted that the intent of the 1988 amendment to § 1447(c) 'was to impose a 30-day limit on all motions to remand except in

those cases where the court lacks subject matter jurisdiction.'" *Id*. (quoting H.R.Rep. No. 104-799, 104th Cong. 2nd Sess. (1996), U.S. Code Cong. & Admin. News at 2). Based on this analysis, the Court found "that the 1996 amendment was designed to ensure that all remand motions based on defects other than lack of subject matter jurisdiction were made within 30 days to ensure judicial efficiency." *Id*.

> *Holmstrom*'s discussion on the history of § 1447(c) ends by acknowledging that:

> [T]he history reflects a congressional fine-tuning of § 1447(c) *in an attempt to identify motions to remand that are grounded in the precise directions that Congress has placed in the Judicial Code to govern removal*, i.e., the "legal requisites" for removal, *see Snapper*, 171 F.3d at 1253, from remand orders based on situations completely divorced, both conceptually and practically, from the considerations that control the removal procedure.

*Id*. at 837–38. By including this last sentence, the Seventh Circuit appears to interpret the word "defect" in § 1447(c) as a failure to comply with the statutory requirements for removal. Under this reasoning, § 1445 is procedural because it is a statutory condition that Congress placed on removal.

Whether § 1445 is jurisdictional or procedural is not determinative in this case because Corbin timely objected to removal and noted the exclusivity bar of the IWCA (Doc. 15, p. 3). *Compare Fultz v. Abb Power T & D Co.*, 210 F.3d 374 (7th Cir. 2000) (noting that removal was proper despite the statutory prohibition that actions brought in state court under state worker's compensation laws cannot be removed because throughout plaintiff's filings he "steadfastly maintained that his is not a worker's compensation case").

Indeed, in most of the circuit court cases reviewed, where courts held that

provisions identifying nonremovable actions are procedural, the plaintiffs did not seek

remand within thirty days of removal. In *Williams*, 391 F.3d 411, the plaintiff did not seek

to remand, and section 1445 was not discussed. Rather, the Second Circuit in a footnote

noted the "distinction between jurisdictional limitations that cannot be forfeited and

other procedural conditions, such as exhaustion and venue, that can be subject to

forfeiture analysis . . . ." *Id*. at 416. The Court continued explaining:

> [W]hen dealing with the removal of actions from state to federal courts, an
> issue that clearly raises concerns about federal jurisdiction, 28 U.S.C. § 1441;
> *see e.g.*, *Stephenson v. Dow Chem. Co.*, 346 F.3d 19, 21 (2d Cir.2003); *Mignogna
> v. Sair Aviation, Inc.*, 937 F.2d 37, 41 (2d Cir.1991), we have held that, even if
> removal was statutorily improper, a party opposing removal must move to
> remand within the 30 day limitation or the objection will be forfeited
> (except for objections that implicate constitutional subject matter
> jurisdiction such as a lack of diversity or a federal question).

*Id*.

In the Fourth and Fifth Circuit cases, the plaintiffs did not seek remand within

thirty days of removal. In *Wiley*, 11 F. App'x at 177-78, after losing at summary judgment,

the plaintiff appealed arguing that removal is barred by 28 U.S.C. § 1445(c). In *Williams*,

985 F.2d at 785, the plaintiff "took no action to remand the case within thirty days of its

removal." The Fifth Circuit held:

> If a plaintiff initially could have filed his action in federal court, yet chose
> to file in state court, even if a statutory provision prohibits the defendant
> from removing the action and the defendant removes despite a statutory
> proscription against such removal, the plaintiff must object to the improper
> removal within thirty days after the removal, or he waives his objection.

*Id*. at 787; *see also Wiley*, 11 F. App'x at 178 (acknowledging that "a party seeking to invoke

§ 1445(c) must object to removal within thirty days after the filing of a notice of removal").

The facts are no different in the Eighth and Ninth Circuit cases. In *Bloom*, 440 F.3d at 1031, and *Vasquez*, 292 F.3d at 1053, the parties failed to seek remand within thirty days after the filing of the notice of removal. These cases do not impact the Court's analysis.[5]

The facts are different in the Third and Tenth Circuit cases because the parties timely sought to remand. Nevertheless, they do not impact the Court's analysis for the reasons that follow. In *Feichko*, 213 F.3d 586, the plaintiff timely moved to remand under § 1445(a),[6] but "[t]he district court dismissed the FELA and BIA claims against [one] [defendant] and all claims against [another] [defendant] as a matter of law, and then denied the motion to remand." *Id*. at 587. However, on appeal, the plaintiff failed to raise § 1445(a). The Tenth Circuit held that "a removal barred by section 1445(a) does not in these circumstances present a matter of subject matter jurisdiction." *Id*. at 589. The Court continued noting that "[t]he issue of improper removal was therefore waived by [plaintiff's] failure to raise it on appeal." *Id*. *Feichko* simply does not apply here.

In *Excel Pharmacy Servs., LLC*, 825 F. App'x 65, a Third Circuit case, the plaintiff timely moved to remand, but plaintiff never conceded that the case arose under a state's workers' compensation laws. *Id*. at 67-69. Thus, "[plaintiff] waived its argument on this point by failing to comply with the requirement in 28 U.S.C. § 1447(c) that it raise this issue within thirty days of the notice of removal." *Id*. To be clear, Corbin concedes that his claims involve an analysis of the IWCA.

---

[5] The Eighth Circuit case, *In re Norfolk S. Ry. Co.*, 592 F.3d 907, 911–12 (8th Cir. 2010), is also unpersuasive as the district court remanded the case back to the state court *sua sponte*.
[6] Under § 1445(a), "[a] civil action in any State court against a railroad or its receivers or trustees, arising under sections 1-4 and 5-10 of the Act of April 22, 1908 (45 U.S.C. 51-54, 55-60), may not be removed to any district court of the United States."

Supreme Court and Seventh Circuit precedent provides a notion that the party seeking to take advantage of an express exception bears the burden of showing that it applies. *See e.g.*, *Breuer*, 538 U.S. at 698 (noting that "[s]ince 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, the burden is on a plaintiff to find an express exception"); *Hart*, 457 F.3d at 679–81 (acknowledging that "the Supreme Court's *Breuer* decision, leads to the conclusion that the party seeking to take advantage of the home-state or local exception to CAFA jurisdiction has the burden of showing that it applies"). Even if Corbin bears the burden of demonstrating that 1445(c) applies, Corbin met the burden, and Fred Weber concedes the point noting "Bluff City is the employer of the deceased and therefore Plaintiff's claims against Bluff City are barred by the IWCA" (Doc. 1, p. 4). Accordingly, the case must be remanded to the Circuit Court for the Third Judicial Circuit in Madison County, Illinois, as the IWCA plays a role in determining whether Corbin would prevail.

## II. Improper Removal

Even if § 1445(c) does not apply, the case must be remanded based on only Fred Weber consenting to removal. Where removal is based on the federal court having original jurisdiction, all defendants who have been *properly* joined and *served* must consent to the removal of the action. 28 U.S.C. § 1446(b)(2)(A). A removing defendant fails to meet this unanimous consent standard by merely indicating that other parties consented to the notice of removal. *Roe v. O'Donohue*, 38 F.3d 298, 301 (7th Cir. 1994) ("A petition for removal fails unless all defendants join it. To 'join' a motion is to support it in writing . . . ."), *overruled in part on other grounds by Murphy Bros., Inc. v. Michetti Pipe*

*Stringing, Inc.*, 526 U.S. 344 (1999).

Here, Bluff City has not filed its own consent to the removal. Fred Weber argues that "[t]he requirement of consent does not apply to fraudulently joined parties like Bluff City" (Doc. 25, p. 5). This argument would be correct if Bluff City was fraudulently joined to defeat diversity jurisdiction. *See Lassers v. Everett*, 2005 WL 8179231, at *2 (N.D. Ill. Oct. 25, 2005) (noting the "failure to consent can be excused if the non-joining defendant has been fraudulently joined in the action") (citing *Fellhauer v. City of Geneva*, 673 F. Supp. 1445, 1447 (N.D. Ill. 1987)). The problem is Fred Weber misunderstands what determines a limited liability company's citizenship. To be clear, Bluff City is a *limited liability corporation* with one member, Fred Weber, which is a citizen of Missouri and Delaware (Doc. 28). Thus, Bluff City is a citizen of Missouri and Delaware. *See, e.g., Copeland v. Penske Logistics, LLC*, 675 F.3d 1040, 1043 (7th Cir. 2012) ("a limited liability company's citizenship includes every state of which any unit holder is a citizen"). Without a member with Illinois citizenship, Bluff City does not destroy diversity jurisdiction, and the doctrine of fraudulent joinder does not apply.[7]

Next, Fred Weber argues that "the notice of removal specifically notes that Bluff City has been advised and consents to the removal" (Doc. 25, p. 5). The problem is Seventh Circuit precedent is clear: an individual writing is still required. *O'Donohue*,

---

[7] In its Supplemental Statement of Jurisdiction, Bluff City states "its principal place of business being 4007 College Avenue, Alton, Illinois 62002" (Doc. 28, p. 1). Bluff City continues that "[t]he fraudulently joined Defendant Bluff City Minerals, LLC is a citizen of Missouri, Illinois and Delaware for diversity purposes" (*Id.*). Courts only look at a limited liability company's principal place of business when determining jurisdiction under CAFA. CAFA states that "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). CAFA does not apply here.

38 F.3d at 301. District courts have concluded that the requirement of consent is met when the notice of removal was filed on behalf of both defendants and refers to "defendants" plural, but Fred Weber and Bluff City did not do that here. *See Samori v. Ralphs Grocery Co.*, 2021 WL 1212798, at *5 (N.D. Ill. Mar. 31, 2021) (acknowledging that "the signature block is sloppy in omitting Kroger, and yes, Kroger should have filed an attorney appearance even if the company believed that it was incorrectly sued. But the actual body of the Notice's text and the key consent statement establish that Kroger did consent to the removal and did join in filing the Notice."). Also, "[w]hile courts in this Circuit have occasionally allowed the filing of an untimely consent to removal, they have done so when the other defendant consented to removal within the thirty-day period, *but the notice of removal simply lacked the otherwise consenting defendant's signature.*" *Compassionate Pain Mgmt., LLC v. Frontier Payments, LLC*, 2017 WL 4423409, at *4 (N.D. Ill. Oct. 4, 2017) (emphasis added). Here, the notice of removal did not simply lack the consenting defendant's signature. Defendants have contested the whole time that Bluff City was fraudulently joined (Doc. 28, p .1).

Because Bluff City has failed to timely consent to removal in writing, the notice of removal is defective, and remand is proper.

### III. Fraudulent Joinder – Applicability of Illinois Workers' Compensation Act

If somehow Bluff City's citizenship destroys diversity, the case must still be remanded because Fred Weber failed to carry its burden of proving that Corbin cannot establish a cause of action against Bluff City. The "fraudulent joinder" doctrine prohibits a plaintiff from joining a non-diverse defendant in an action simply to destroy diversity

jurisdiction. *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999); *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). When a removing defendant establishes fraudulent joinder, the district court considering removal may "disregard, for jurisdictional purposes, the citizenship of certain non-diverse defendants, assume jurisdiction over a case, dismiss the non-diverse defendants, and thereby retain jurisdiction." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 763 (7th Cir. 2009).

To establish fraudulent joinder, the removing defendant has the burden of proving the plaintiff cannot establish a cause of action against the in-state defendant. *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013). Courts only assess whether the plaintiff's complaint provides a reasonable basis for recovery against an in-state defendant; not whether the plaintiff will ultimately be successful on the merits. *Asperger v. Shop Vac Corp.*, 524 F.Supp.2d 1088, 1096 (S.D. Ill. 2007). In reviewing such a claim, a court must construe "all issues of fact *and law* in favor of the plaintiff . . . ." *Morris*, 718 F.3d at 666 (quoting *Poulos v. NAAS Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992)). Even if a state court may ultimately find a plaintiff has failed to state a claim against a defendant, joinder of the claim is not "fraudulent" for purposes of jurisdiction so long as the state law issue is subject to reasonable argument on both sides. *See Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 853 (3d Cir. 1992). Put differently, the defendant has the "heavy burden" of showing the plaintiff's claim has "no chance of success" against the non-diverse defendant. *Poulos,* 959 F.2d at 73.

Here, the parties' dispute focuses on whether the decedent was an employee of Bluff City, and thus, whether Corbin's claims against Bluff City are barred under the

IWCA. An "[employer] [may] raise[ ] the IWCA's exclusivity provisions as an affirmative defense in its *12(b)(6) motion to dismiss*." *Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1039 (7th Cir. 2018) (emphasis added). But the IWCA argument is a nonstarter when evaluating fraudulent joinder, because it is an affirmative defense. *See United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (noting "[d]ismissal under Rule 12(b)(6) was irregular, for the statute of limitations is an affirmative defense"). Plaintiffs, like Corbin, are not required to plead around defenses, and the Seventh Circuit has acknowledged that "[r]esolving defenses comes after the complaint stage." *Id*. Indeed, "the test for fraudulent joinder . . . is a less searching test than the test under Rule 12(b)(6) . . . . In fact, a federal court may find that a nondiverse defendant is not fraudulently joined for the purposes of jurisdiction, and later a state court may find that the plaintiff failed to state a claim against the same nondiverse defendant, who will then be dismissed from the suit." *Hill v. Olin Corp.*, 2007 WL 1431865, at *4 (S.D. Ill. May 14, 2007) (quoting *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 847 (S.D. Ill. 2006)) (citations omitted).

Expanding the test for fraudulent joinder to be more like the searching test under Rule 12(b)(6) would not help Fred Weber because Bluff City's defense is not conclusively established. *See Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d 951, 956–57 (N.D. Ill. 2002) ("Because IWCA exclusivity is an affirmative defense, dismissal on a Rule 12(b)(6) motion is appropriate only where the defense is conclusively established by the complaint, concessions made by the plaintiff, or any other material appropriate for judicial notice") (emphasis added). In Corbin's complaint, he alleges "[t]hat at all times relevant hereto, the DECEDENT was an employee of Bluff City" (Doc. 1-1, p. 4). Corbin

continues alleging "[t]hat on May 21, 2020, the DECEDENT was working at the mine as an employee of Bluff City when he sustained injuries as hereinafter alleged" (*Id*. at p. 8). In the same complaint, Corbin alleges "[t]hat at all times relevant hereto, the DECEDENT was an employee of *Fred Weber*" (*Id*. at p. 12) (emphasis added). Corbin continues alleging "[t]hat on May 21, 2020, the DECEDENT was working at the mine as *an employee of Fred Weber* when he sustained injuries as hereinafter alleged" (*Id*. at p. 16) (emphasis added). Bluff City's defense is not conclusively established by the complaint.

Expanding the analysis to "summary judgement-type evidence" does not help Fred Weber. *See CC Indus., Inc. v. ING/Reliastar Life Ins. Co.*, 266 F.Supp.2d 813, 815–16 (N.D. Ill. 2003) (acknowledging that "[i]n determining whether fraudulent joinder has occurred, courts are not limited to the allegations of the pleadings but may pierce the pleadings and consider summary judgment-type evidence such as affidavits and deposition testimony") (quotations and citations omitted). Defendants have provided Corbin's W-2s showing that Bluff City was his employer in 2014 through 2019 (Doc. 21-1, pp. 1-8).[8] Corbin combats this, however, by providing an email from the Vice President of Safety and Health at Fred Weber, Inc., where he explains that "[w]e had a potentially serious injury occur at BCM Alton yesterday around 12:30 PM" (Doc. 23-1). The Vice President continues by referring to the decedent as an "employee" (*Id*.).

Construing the factual dispute regarding who employed Decedent in favor Corbin, the Court finds an Illinois state court could rule against Bluff City on its IWCA

---

[8] An individual can have multiple W-2s in a year. The W-2 does not conclusively establish Decedent's employment at the time of the accident.

defense. Accordingly, if Bluff City is a citizen of Illinois,[9] the Court cannot disregard its citizenship—meaning the parties are not diverse—and this Court lacks subject matter jurisdiction.[10]

## CONCLUSION

For these reasons, the Motion to Remand (Doc. 15) filed by Plaintiff Tyler Corbin is **GRANTED**. Defendant Bluff City Mineral's Motion to Dismiss is **DENIED as moot**. This action is **REMANDED** to the Circuit Court of Madison County, Illinois.

**IT IS SO ORDERED.**

**DATED:  June 14, 2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

---

[9] Again, the Court is under the impression that Bluff City is a limited liability company. The principal place of business does not impact a limited liability company's citizenship for the purposes for diversity jurisdiction. *Cosgrove v. Bartolotta,* 150 F.3d 729, 731 (7th Cir. 1998).

[10] For the sake of completeness, the "Common Defense Rule" does not apply. Under the "common defense" rule, a district court must remand if assessing the non-diverse defendant's chance of success forecloses the claims against diverse defendants. *See Walton v. Bayer Corp.*, 643 F.3d 994, 1001 (7th Cir. 2011) ("a plaintiff can defeat the fraudulent-joinder exception to the requirement of complete diversity of citizenship by proving that his claim against the nondiverse defendant is no weaker than his claim against the diverse defendants"). Here, the success of the IWCA defense of Bluff City does not foreclose the claims against Fred Weber.